USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/1/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                    :
UNITED STATES OF AMERICA,                                           :
                                                                    :
                              -against-                             :          21-CR-94 (VEC)
                                                                    :
                                                                    :          MEMORANDUM
CORNELL NEILLY,                                                     :          OPINION AND ORDER
                                          Defendant.                :
                                                                    :
-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       Defendant Cornell Neilly moves to dismiss the indictment pursuant to the Sixth

Amendment and the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 *et seq.*.[1]

*See* Notice of Mot., Dkt. 17.  Defendant contends that the indictment was obtained in violation of

his right to a grand jury drawn from a fair cross section of the community because Black and

Latino individuals were significantly underrepresented in the pool from which his grand jury was

drawn.  *See generally* Def. Mem., Dkt. 18.  For the following reasons, Defendant's motion is

DENIED.

## BACKGROUND

       On January 29, 2021, Defendant was presented before a magistrate judge on a criminal

complaint alleging multiple robberies and attempted robberies of banks in this district.  *See*

---

[1]     Defendant's motion also purports to challenge the indictment under the Equal Protection Clause of the Fifth Amendment.  *See* Notice of Mot. at 1, Dkt. 17; Def. Mem. at 1, Dkt. 18.  Defendant's Fifth Amendment challenge proceeds no further than asserting that his motion is brought pursuant to the Fifth Amendment, in addition to his Sixth Amendment and JSSA claims.  Accordingly, the Court need not address whether Defendant's indictment was obtained in violation of his Fifth Amendment rights, although were it to do so, the Court would conclude that it was not.  *See United States v. Middlebrooks*, No. 21-CR-89, 2021 WL 2402162, at *2 n.3 (S.D.N.Y. June 10, 2021) (concluding that, on an identical motion, defendant failed to brief the Fifth Amendment claim and failed to present any evidence of intentional discrimination, necessarily dooming any Fifth Amendment claim); *see also United States v. Suquilanda*, No. 21-CR-263, 2021 WL 3500868, at *1 n.1 (S.D.N.Y. Aug. 9, 2021) (assuming similar references to a Fifth Amendment claim were in error and refraining from addressing Fifth Amendment claim).

Complaint, Dkt. 1; *see also* Dkt. 4.  On February 10, 2021, a grand jury in the Manhattan division of the Southern District of New York returned an Indictment charging Defendant with multiple counts of attempted bank robbery and bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2.  Indictment, Dkt. 6.  On February 17, 2021, Defendant, on consent from the Government, filed a letter motion seeking "authorization to inspect records relating to the composition of the grand jury that issued the indictment in this case" in anticipation of a motion challenging the grand jury selection procedures.  *See* Dkt. 8.  The Court granted Defendant's motion on February 18, 2021, *see* Dkt. 11, and issued a protective order on March 15, 2021, permitting Defendant to inspect grand jury records that had already been produced to the Federal Defenders in *United States v. Li*, No. 20-CR-568, *see* Dkt. 16.  On March 17, 2021, Defendant filed this motion to dismiss the indictment.  *See* Notice of Mot.

The JSSA requires each federal district court to "devise and place into operation a written plan for random selection of grand and petit jurors." 28 U.S.C. § 1863(a).  The relevant plan in the Southern District of New York has been in operation since 2009 and sets the terms for the random selection of grand and petit jurors in this district.  *See Amended Plan for the Random Selection of Grand and Petit Jurors in the United States District Court for the Southern District of New York* ("SDNY Jury Plan") (Feb. 13, 2009), https://www.nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf.  Pursuant to the SDNY Jury Plan, prospective jurors are first drawn at random from voter registration lists to fill Master Jury Wheels for the district's two divisions, Manhattan and White Plains.  *See id.*, art. III.A–C.  The two Master Jury Wheels are "emptied and refilled" every four years.  *Id.*, art. III.B.  "Once or twice each year, or more frequently, if necessary, at times to be determined by the Chief Judge, the Clerk shall draw from the Master Wheels the names and addresses of persons to

whom questionnaires will be sent for the purpose of examining their qualifications and availability for jury service." *Id.*, art. III.D.  The individuals who return their questionnaires and who meet the qualification requirements based on their responses comprise the respective qualified wheels for Manhattan and White Plains.  *Id.*  The SDNY Jury Plan's qualification criteria are based on "neutral standards such as the ability to speak English, citizenship and age, mental capacity, and criminal record."  *United States v. Schulte*, No. 17-CR-548, 2021 WL 1146094, at *2 n.1 (S.D.N.Y. Mar. 24, 2021).  Petit and grand jury venires are composed of a random selection of those individuals in the qualified wheel.  SDNY Jury Plan, art. III.F.

## DISCUSSION

In the past six months, a host of defendants in this district have filed motions similar or identical to that filed by Mr. Neilly.  During that same period, every court to rule on such a motion has rejected the Sixth Amendment and JSSA challenges to the SDNY Jury Plan.  *See, e.g.*, *United States v. Lawrence*, No. 21-CR-127, 2021 WL 3500838 (S.D.N.Y. Aug. 9, 2021); *United States v. Suquilanda*, No. 21-CR-263, 2021 WL 3500868 (S.D.N.Y. Aug. 9, 2021); *United States v. Scott*, No. 20-CR-332, 2021 WL 2643819 (S.D.N.Y. June 28, 2021);[2] *United States v. Charles*, No. 20-CR-419, 2021 WL 2457139 (June 16, 2021); *United States v. Middlebrooks*, No. 21-CR-89, 2021 WL 2402162 (S.D.N.Y. June 10, 2021); *United States v. Balde*, No. 20-CR-281, Dkt. 85 (May 17, 2021); *United States v. Segovia-Landa*, No. 20-CR-287, 2021 WL 1966117 (S.D.N.Y. May 17, 2021); *United States v. Nieves*, No. 19-CR-354, Dkt. 108 at 10 (Apr. 14, 2021); *United States v. Tagliaferro*, No. 19-CR-472, 2021 WL 1172502

---

[2]      In *Scott*, Judge Torres rejected Defendant's Sixth Amendment and JSSA challenges but held that the Government's decision to indict the defendant in White Plains, for which the jury pool "substantially underrepresented certain racial groups," instead of Manhattan (the division to which the case was assigned for trial) violated the defendant's Fifth Amendment rights.  *Scott*, 2021 WL 2643819, at *13–14.

(S.D.N.Y. Mar. 29, 2021); *Schulte*, 2021 WL 1146094; *United States v. Allen*, No. 20-CR-366, 2021 WL 431458 (S.D.N.Y. Feb. 8, 2021).  This Court now joins them.

## I.    Legal Standard

"The Sixth Amendment guarantees a criminal defendant a jury selected from a fair cross section of the community." *United States v. Rioux*, 97 F.3d 648, 654 (2d Cir. 1996) (citing *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975)).  The right to a jury drawn from a fair cross section of the community applies to both petit and grand juries.  *See Schulte*, 2021 WL 1146094, at *2 n.2 (citation omitted).  To demonstrate a prima facie violation of the fair cross-section requirement of the Sixth Amendment, a defendant must satisfy three elements: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).

The JSSA mandates that a criminal defendant "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.  "[T]he *Duren* test governs fair cross section challenges under both the [JSSA] and the [S]ixth [A]mendment." *United States v. LaChance*, 788 F.2d 856, 864 (2d Cir. 1986).   The JSSA authorizes a defendant to "move to dismiss the indictment . . . against him on the ground of substantial failure to comply with the provisions of [the JSSA] in selecting the grand or petit jury." 28 U.S.C. § 1867(a).  "Mere 'technical' violations of the procedures prescribed by the [JSSA] do not constitute 'substantial failure to comply,'" and whether a violation rises to the level of substantial "depends upon the nature and

extent of its effect on the wheels and venire from which a defendant's grand jury was derived."
*LaChance*, 788 F.2d at 870 (cleaned up); *see also United States v. Purdy*, 946 F. Supp. 1094,
1106 (D. Conn. 1996) (stating that a substantial failure exists when the violation "frustrates the
policy objectives of the [JSSA], namely the random selection of jurors and the objective
determination of juror disqualification, exemptions and excuses"), *aff'd*, 144 F.3d 241 (2d Cir.
1998).  "If there is no discrimination, even in the face of disproportionate representation, there is
no substantial violation of the JSSA, because its underlying purpose was not compromised."
*Scott*, 2021 WL 2643819, at *15 (citation omitted).

## II.   Defendant's Arguments

Defendant's general challenge to the indictment asserts that a significant percentage of
Black and Latino individuals were excluded from the master and qualified wheels from which
his grand jury was selected.  *See* Def. Mem. at 2.  In his opening brief, Defendant argued that,
using any method of calculation, Black and Latino individuals are significantly underrepresented
in the Manhattan qualified jury wheel, and the fact that such underrepresentation has persisted
and increased over at least the past decade demonstrates conclusively that such
underrepresentation is the result of systematic exclusion in the jury-selection process.  *Id.* at 6, 8–
12.  In his reply, Defendant again asserted that "the existence of continued significant disparities
over an extended period of time" suffices to establish a prima facie case of systematic exclusion.
Def. Reply at 7.  In addition, however, Defendant highlighted four "key choices" identified by
Defendant's expert that allegedly result in "the systematic underrepresentation of jury-eligible
Black and Latino New Yorkers."  *Id.* at 8.  Those choices are: (1) drawing the master wheel
exclusively from voter registration rolls; (2) refilling the master wheel every four years; (3)

removing inactive voters from the wheel; and (4) failing to attempt to reach jurors who do not respond to their questionnaires.[3]  *Id.* at 8–9.

In addition to challenging the exclusion of Black and Latino individuals from the jury pool, Defendant raises two separate claims under the JSSA.  Defendant argues that "the total exclusion of 'inactive' voters and of voters with alternate mailing addresses in Putnam County from the qualified wheel violates the JSSA."  Def. Mem. at 14.

### III.    Sixth Amendment Challenge

For the same reasons articulated in the opinions issued by sister courts in this district, the Court concludes that the SDNY Jury Plan is constitutional and that the drawing of Defendant's grand jury did not violate his Sixth Amendment right to a jury drawn from a fair cross section of the community.  Both parties agree that Black and Latino individuals are distinctive groups under *Duren*.  *See Rioux*, 97 F.3d at 654.  Because the Court determines that Defendant has failed to demonstrate that any underrepresentation is a result of systematic exclusion in the jury selection process, the Court need not determine whether Defendant has made a prima facie showing of underrepresentation.  *See Tagliaferro*, 2021 WL 1172502, at *3 n.1 (describing the *Duren* framework as a "conjunctive test" and thus refraining from addressing the second *Duren* factor after concluding that defendant could not satisfy the systematic exclusion prong).

Despite identifying potential flaws and areas for improvement with the SDNY Jury Plan, Defendant's motion fails to demonstrate that any alleged underrepresentation results from systematic exclusion of Black and Latino individuals *as a result of the jury plan*, as opposed to as a result of purely external forces.  Instead, "each component of the SDNY Jury Plan that [Mr.

---

[3]       Defendant's reply appears to characterize the decision by the jury administrator not to attempt to reach jurors who do not respond to their questionnaires, whether the questionnaire was deemed undeliverable or for any other reason, as two distinct choices.  For purposes of this opinion, however, the Court treats these as a single "key choice."

Neilly] challenges is 'facially neutral' and only creates underrepresentation, if any, to the extent the component is affected by 'external forces.'" *Charles*, 2021 WL 2457139, at *4.

"There is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces." *Rioux*, 97 F.3d at 658. "To demonstrate systematic exclusion, the Defendant must isolate specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue." *Tagliaferro*, 2021 WL 1172502, at *3 (citing *Rioux*, 97 F.3d at 658). Moreover, "[a] defendant cannot 'make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation.'" *Lawrence*, 2021 WL 3500838, at *9 (quoting *Berghuis v. Smith*, 559 U.S. 314, 332 (2010)).

Defendant's reliance on the statistical showing of underrepresentation alone is unpersuasive, as is Defendant's dependence on the supposed persistence of this underrepresentation over a decade-plus. "Defendant 'conflates *Duren*'s underrepresentation element' with 'systematic exclusion.'" *Middlebrooks*, 2021 WL 2402162, at *3 (quoting *Tagliaferro*, 2021 WL 1172502, at *3). "The law is clear that evidence of mathematical disparity, without more, is insufficient to make out a prima facie case of improper jury selection." *Anderson v. Casscles*, 531 F.2d 682, 685 (2d Cir. 1976); *see also Suquilanda*, 2021 WL 3500868, at *4 (same). Further, Defendant's argument that the persistence of underrepresentation alone suffices to demonstrate systematic exclusion is unsupported by the precedent to which Defendant cites. *See Lawrence*, 2021 WL 3500838, at *9 (undercutting the defendant's reliance on both *Duren* and *Biaggi* for the proposition that systematic exclusion can be shown by underrepresentation over a significant period of time).

The "key choices" identified in Defendant's reply similarly fail to demonstrate systematic exclusion. "[T]he use of voter registration lists, refilling the master wheel at four-year intervals, . . . the exclusion of inactive voters," and failing to follow up with potential jurors who do not respond to the juror qualification questionnaire are facially neutral practices. *Id.* at *10. "[S]ystematic exclusion does not occur simply because a facially neutral disqualification criterion disproportionately impacts a particular group." *United States v. Barlow*, 732 F. Supp. 2d 1, 40 (E.D.N.Y. 2010), *aff'd*, 479 F. App'x 372 (2d Cir. 2012).

Most critically, each of Defendant's purported bases for finding systematic exclusion all fail as quintessential examples of "external forces" and thus cannot, as a matter of law, support Defendant's Sixth Amendment claim. First, in Defendant's view, the choice to refill the master wheel every four years, rather than more frequently, produces underrepresentation by virtue of the exclusion of younger and more mobile individuals, both groups in which Black and Latino voters are overrepresented. Def. Reply at 8. "[M]oving tendencies and people's ages are external forces." *Charles*, 2021 WL 2457139, at *4; *see also Middlebrooks*, 2021 WL 2402162, at *3 ("Defendant fails to recognize that changes of address and other demographic changes are factors that the Second Circuit has termed 'external' and not 'systematic.'" (citing *Rioux*, 97 F.3d at 658)); *Tagliaferro*, 2021 WL 1172502, at * 4 ("[T]he cause of the exclusion (e.g. people moving) is an external force, not an inherent flaw within the Jury Plan." (citing *Rioux*, 97 F.3d at 658)); *Schulte*, 2021 WL 1146094, at *8 ("[E]ven granting the dubious premises [that African Americans and Hispanic Americans are, on average, younger and thus more likely to move,] . . . the true cause of the exclusion — younger people moving more often — is an external force, not a systematic defect inherent in the Jury Plan." (citing *Rioux*, 97 F.3d at 658)).

Similarly, because the exclusion of inactive voters from the wheel is predicated on underlying factors, such as an individual's having moved, this choice also does not result in systematic exclusion, and any underrepresentation on account of this choice is a result of external forces. *See Charles*, 2021 WL 2457139, at *5 ("In other words, voters become 'inactive' when they move, which constitutes an external force and undermines finding a violation."); *Middlebrooks*, 2021 WL 2402162, at *3 ("Here again, the cause of exclusion is people moving, which courts have held 'is an external force.'" (citation omitted)); *Schulte*, 2021 WL 1146094, at *8 ("[T]he Court cannot charge the District's Jury Plan with a Sixth Amendment violation because of how often people move residences throughout the District").

Mr. Neilly's reliance on the SDNY Jury Plan administrator's decision not to attempt to reach jurors who do not respond to their questionnaires (for any reason) is similarly unavailing. "A recipient's decision not to complete and return the juror questionnaire is plainly a factor external to the juror selection process." *Lawrence*, 2021 WL 3500838, at *12; *see also Rioux*, 97 F.3d at 658 ("The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes."); *Charles*, 2021 WL 2457139, at *4 n.6 ("Much like the Court 'cannot charge the District's Jury Plan with a Sixth Amendment violation because of how often people move residences throughout the District,' the Court cannot charge a Sixth Amendment violation based on people's choice not to return the questionnaire or the undeliverability of their mail." (quoting *Schulte*, 2021 WL 1146094, at *8)).

Finally, Defendant's argument that the SDNY Jury Plan's exclusive use of voter registration lists constitutes systematic exclusion is directly counter to binding Second Circuit precedent. *See Schanbarger v. Macy*, 77 F.3d 1424, 1424 (2d Cir. 1996) (per curiam) ("[A] jury

9

venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section requirement nor the Fifth Amendment's guarantee of Equal Protection.").[4]

In short, "each 'key choice' identified by [Mr. Neilly] either does not directly create the complained-of underrepresentation or is an 'external force' and not an 'inherent flaw with the jury plan.'" *Suquilanda*, 2021 WL 3500868, at *4 (quoting *Charles*, 2021 WL 2457139, at *4–5).

## IV.   JSSA Challenge

Because a fair cross-section challenge under the JSSA is evaluated using the same *Duren* test as Sixth Amendment claims, Defendant's JSSA challenge concerning the exclusion of Black and Latino individuals from the jury pool is denied for the reasons stated above. *See LaChance*, 788 F.2d at 864.

Defendant also argues that the elimination of inactive voters "is clearly a violation of the plain language of the JSSA which mandates that, at a minimum, 'voter registration lists' be used for jury wheels." Def. Reply at 12.  The Court is unpersuaded.  The exclusion of inactive voters — "registered voters whose status is changed to inactive because the county elections boards have received information, whether accurate or not, that the voter has moved" — from the master wheel is "entirely logical for a jury selection process." *Allen*, 2021 WL 431458, at *10 (cleaned up); *see also Lawrence*, 2021 WL 3500838, at *13 ("The Jury Plan's exclusion of persons whose address information appears to be outdated is entirely consistent with [the] objective [of choosing the broadest and most accurate list of persons suitable for federal jury service].").  Moreover, "the JSSA contemplates that the lists from which the master wheel will

---

[4]      While drawing names solely from the voter registration lists does not run afoul of the Sixth Amendment or the JSSA, the fact that doing so may contribute to an underrepresentation of Blacks and Latinos in the master jury wheel suggests to the Undersigned that the Court should seriously consider supplementing the voter registration lists with other sources of names to increase representation of Blacks and Latinos in the master jury wheels.

be drawn will be imperfect and that not all citizens technically eligible to serve on juries will be considered for the master wheel: the JSSA requires voter registration lists be used, though not all citizens are registered to vote." *Scott*, 2021 WL 2643819, at *15. "Therefore, though the exclusion of inactive voters . . . may prevent some citizens from serving on juries, it does not amount to a violation of the JSSA." *Id.* Finally, even to the extent the exclusion of inactive voters does constitute a violation of the JSSA, it is, at most, a technical violation. *See Allen*, 2021 WL 431458, at *10 (citing Government's expert's conclusion that "the impact of excluding inactive voters from the jury selection process . . . [is] minimal"); *see also Suquilanda*, 2021 WL 3500868, at *4 (deeming exclusion of inactive voters and those with alternate addresses in Putnam County to be "nonactionable technical violations at best" and concluding that defendant had not established that alleged JSSA violations "frustrat[ed] the Act's principles of random selection" (cleaned up)); *Middlebrooks*, 2021 WL 2402162, at *4 (rejecting argument that the exclusion of inactive voters violates the JSSA, and even if it did, deeming it a technical violation).

Similarly, the "clerical error" that resulted in the exclusion of voters with alternate mailing addresses in Putnam County — "the smallest county in the Foley Square division with the fewest Black and Hispanic persons" — did not have a substantial effect on any alleged underrepresentation, and, therefore, it is also a nonactionable technical violation of the JSSA. *United States v. Jarrett*, No. 19-CR-670, Dkt. 104 at 8–9 (Apr. 12, 2021) (citing *LaChance*, 788 F.2d at 870); *see also Lawrence*, 2021 WL 3500838, at *14 ("But the master wheel contains the names of 2,569,803 people.  In this context, the exclusion of 3,333 people has a negligible effect on the master and qualified wheels." (internal citation omitted)); *Middlebrooks*, 2021 WL 2402162, at *4 (find the issue involving alternate addresses to be a technical violation of the

JSSA, which also resulted in an increase in representation among Black and Latino voters, negating any argument of a substantial violation).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment is DENIED. The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 17.

**SO ORDERED.**

**Date:** **September 1, 2021**
       **New York, NY**

                              **VALERIE CAPRONI**
                           **United States District Judge**